**Adriana P. PEREZ, Appellant**

v.

**WEBB COUNTY, Appellee**

No. 04–14–00275–CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: June 3, 2015

John Blaise Gsanger, Corpus Christi, TX, for Appellant.

Molly Santos, Laredo, TX, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Marialyn Barnard, Justice, Luz Elena D. Chapa, Justice

## OPINION

Opinion by: Luz Elena D. Chapa, Justice

In the underlying lawsuit, Adriana Perez sued Webb County for injuries she allegedly sustained when the vehicle she was driving was struck by a marked patrol car driven by Corporal Horacio Yzaguirre of the Webb County Sheriff's Office when he drove through a red light. Webb County filed a motion to dismiss the suit for lack of jurisdiction. The County alleged Yzaguirre's actions at the time of impact were at most negligent, which is insufficient to defeat the County's immunity under the emergency exception to the waiver of immunity. The trial court granted the motion, and Perez now appeals. A majority of this panel agrees the judgment should be reversed; however, for different reasons. I write only on the issue of whether Perez raised a fact issue on whether Yzaguirre's actions were taken with conscious indifference or reckless disregard for the safety of others.

## BACKGROUND

The accident occurred on a clear morning on Wednesday, November 3, 2010, at the intersection of Chihuahua Street and Bartlett Avenue in Laredo, Texas. Chihuahua is a straight one-way street going east, and Bartlett is a straight one-way street going north. There is a traffic light at the intersection. At around 8:00 a.m., Perez was driving north on Bartlett with the green light. At about the same time, Yzaguirre, who was the patrol supervisor and a field supervisor, was driving his vehicle east on Chihuahua when he heard over his radio a dispatch "for a domestic call in progress" at a location about seven miles away. Yzaguirre testified he activated his overhead lights and headed in the direction of the call's location. He stated he used his overhead lights and his air horn to move the traffic, but not his siren, as he drove on Chihuahua. When he entered the Chihuahua/Bartlett intersection, Yzaguirre's vehicle collided with Perez's vehicle.

Perez sued Webb County, alleging her injuries were proximately caused by Yzaguirre's conduct. In her petition, Perez asserted Yzaguirre was not on an "emergency call," and, if he was, he did not comply with "applicable law." Perez also asserted Yzaguirre's conduct involved an extreme degree of risk, and he had actual,

subjective awareness of the risk his actions posed, "but he proceeded with conscious indifference to the rights, safety and welfare of others, including [Perez]." Therefore, according to Perez, the emergency exception to the waiver of immunity does not apply.

## STANDARD OF REVIEW

 We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id.* We construe the pleadings liberally in favor of the plaintiff. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000)). When evidence is submitted that implicates the merits of the case, as is the case here, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Id.* at 228; *see also* Tex.R. Civ. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda,* 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the nonmovant to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

 A governmental unit is immune from both suit and liability unless its immunity has been waived. *See Tex. Dep't of Transp. v. Garza,* 70 S.W.3d 802, 806 (Tex.

2002). Section 101.021(1) of the Texas Tort Claims Act ("TTCA") waives immunity for claims arising from the negligent use of a motor-driven vehicle by a governmental unit's employee. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1)(A) (West 2011). However, the governmental unit retains its immunity from suit if one of the exceptions to the waiver of immunity in the TTCA applies. *See, e.g., Garza,* 70 S.W.3d at 806 (State retains immunity from suit if the exception in section 101.056 for discretionary acts and omissions applies). For example, even in situations where immunity may generally be waived, such as through the negligent operation or use of a motor vehicle, statutory exceptions for emergencies may override the immunity waiver. *See City of San Antonio v. Hartman,* 201 S.W.3d 667, 672 (Tex. 2006).

Here, the County asserted its entitlement to immunity under the "emergency exception" to the waiver of immunity contained in the TTCA. *See Tex. Dep't of Pub. Safety v. Little,* 259 S.W.3d 236, 238 (Tex.App.–Houston [14th Dist.] 2008, no pet.). Under the emergency exception, the TTCA "does not apply to a claim arising ... from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others...." Tex. Civ. Prac. & Rem.Code § 101.055(2). Assuming, without deciding, that Yzaguirre was responding to an emergency call or reacting to an emergency situation, the evidence raises a fact issue on whether his actions were taken with conscious indifference or reckless disregard for the safety of others.

## RECKLESS DISREGARD

■ The laws regarding the operation of an emergency vehicle are located in the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 546.001–.006 (West 2011 & Supp.2014); *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex.App.–San Antonio 2003, no pet.); *City of Laredo v. Varela*, No. 04–10–00619–CV, 2011 WL 1852439, at *1–2 (Tex.App.–San Antonio May 11, 2011, pet. denied) (mem.op.); *City of San Antonio v. Riley*, No. 04–09–00162–CV, 2009 WL 2045231, at *1 (Tex.App.–San Antonio July 15, 2009, no pet.) (mem.op.); *accord Tex. Dep't of Pub. Safety v. Sparks*, 347 S.W.3d 834, 837–38 (Tex.App.–Corpus Christi–Edinburg 2011, no pet.).

Transportation Code section 546.005 provides that the driver of an emergency vehicle must drive "with appropriate regard for the safety of all persons" and he is not relieved of "the consequences of reckless disregard for the safety of others." TEX. TRANSP. CODE ANN. § 546.005. A person commits the offense of reckless driving if "the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a).

■ Interpreting the uncodified predecessor of section 546.005, the Texas Supreme Court held that this provision "imposes a *duty* to drive with due regard for others by avoiding negligent behavior, but it only imposes *liability* for reckless conduct." *City of Amarillo v. Martin*, 971 S.W.2d 426, 431 (Tex.1998). This requires more than a momentary judgment lapse—it requires a showing that the driver committed an act he knew or should have known posed a high degree of risk of serious injury. *Id.* at 430; *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.–Houston [1st Dist.] 2008, no pet.). In *Martin*, the court noted the Texas legislature specifically excluded operation of emergency vehicles in emergency situa-

tions from the general waiver of immunity for negligent operation of vehicles contained in the TTCA and held, "[w]ere we to . . . impose liability generally on emergency vehicle operators for mere negligence, we would render meaningless the portion of section 101.055 that specifically excludes emergency vehicle operators from the waiver of immunity for negligence." *Martin*, 971 S.W.2d at 430.

■ Thus, a governmental entity is liable for damages resulting from the emergency operation of an emergency vehicle if the operator acted recklessly; that is, if the operator "committed an act that the operator knew or should have known posed a high degree of risk of serious injury" but did not care about the result. *Id.*; *Smith*, 126 S.W.3d at 545; *see also Hartman*, 201 S.W.3d at 672 n. 19 ("conscious indifference" and "reckless disregard" have been interpreted to require proof that a party knew the relevant facts but did not care about the result).

As a general rule, "[a]n operator [of a vehicle] may not drive at a speed greater than is reasonable and prudent under the circumstances then existing." TEX. TRANSP. CODE ANN. § 545.351(a). However, "[t]he regulation of the speed of a vehicle under this subchapter does not apply to: (1) an authorized emergency vehicle responding to a call; [or] (2) a police patrol. . . ." *Id.* § 545.365(a)(1), (2). The operator of an authorized emergency vehicle may "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation." *Id.* § 546.001(2). The operator of an authorized emergency vehicle also may "exceed a maximum speed limit, [with an exception not applicable here], as long as the operator does not endanger life or property." *Id.* § 546.001(3).

Because the County raised the emergency exception under section 101.055(2), Per-

ez had the burden to raise a fact issue on whether Yzaguirre was reckless. Perez contends Yzaguirre recklessly failed to comply with the applicable laws and ordinances by (1) travelling at thirty-six miles per hour in a thirty-mile-per-hour zone just prior to the impact; (2) failing to apply his brakes or slow down as he entered the Chihuahua/Bartlett intersection against the red light; (3) failing to engage his siren as required; and (4) violating the applicable provisions of both the Texas Transportation Code and the Sheriff's office's standard operating procedures.

Yzaguirre was the only witness at the hearing on Webb County's motion to dismiss. Yzaguirre explained he heard the dispatch, and he knew the officer assigned to the area of the call was busy with another case about ten to fifteen miles away from the location of the disturbance. Yzaguirre said he was only about seven miles away. Yzaguirre said a call such as the one here is classified as "domestic violence" and is "high priority" because "[i]t changes quickly, needs immediate attention due to the fact that it was an assault in progress, so you respond as quickly as possible."

Yzaguirre testified that as he approached the intersection located before the Chihuahua/Bartlett intersection ("the Malinche intersection"), traffic was in the left lane; therefore, he started to change lanes, "almost came to a complete stop," and moved to the right lane. He then accelerated as he approached the Chihuahua/Bartlett intersection. Yzaguirre said he slowed, looked left and right, used his air horn, and, "using due caution," proceeded through the Chihuahua/Bartlett intersection against the red light. He believed the intersection was clear as he approached, and he saw no vehicles in the intersection when he looked left and right.

Yzaguirre testified about his approach to the Chihuahua/Bartlett intersection as follows:

Traffic had started edging over. The traffic on the left lane had started moving over and slowing down. I was on the right lane accelerating trying to get through that intersection as quickly as possible without causing injuries or anything. But as traffic kept moving, they yield.

They gave me a clear sight on Bartlett to my left. When I looked to my right, I had my blind spot. When I looked to the left again, I was approaching using my air horn as an audible to get to the intersection. And when I turned back to get to the intersection, [Perez's vehicle] appeared in my line of sight, and I braked and struck [her vehicle] on the right-rear tire.

Yzaguirre admitted that he not only did not see Perez before he entered the Chihuahua/Bartlett intersection, but he was *unable* to see whether vehicles were approaching from the right. Nonetheless, Yzaguirre proceeded through the intersection against the red light despite being aware of his blind spot. Video from Yzaguirre's dashboard camera indicates that as one drives on Chihuahua while approaching Bartlett, on the right-hand corner of the intersection a building and bushes sit a few feet back from the road that obstruct the view of drivers on Chihuahua.

Yzaguirre also testified he activated his air horn three or four times before entering the intersection. Yzaguirre said he did not activate his siren because it did not work simultaneously when he sounded his air horn. Yzaguirre explained that, generally speaking, every time he hit the air horn, the wailing siren would turn off, and because he was using the air horn constantly trying to get through traffic, the

wailing siren was not sounding.[1] "I was using my air horn faster than my siren was going. So it was constant on the air horn."

Yzaguirre also agreed that (1) accelerating into an intersection, (2) failing to slow as necessary at a red light, and (3) proceeding into an intersection on a red light without first ensuring traffic was yielding posed a high degree of risk of serious injury. He also answered "true" to the question: "Just because you see people yielding to one side of you doesn't mean that you get to presume that the people on the other side of the blind intersection are yielding to you, true?"

In addition to his own recollection of what happened, Yzaguirre was questioned about the information taken from his vehicle's dashboard camera. The camera was equipped with a screen that shows a variety of "triggers," which indicate when he activated his siren or lights, and when he braked. The triggers are wired directly into the car's computer system and show real time. The camera also shows GPS information about the vehicle's speed, but because the GPS is not wired into the car, there is a slight time delay, which means the speed shown on the screen could, in realtime, be slower or faster than the speed at which he was travelling. The GPS indicated Yzaguirre slowed to about sixteen miles per hour at the Malinche intersection. The triggers indicate he had turned on his emergency lights, used his air horn three or four times, and applied his brakes at the timer mark of 08:17:23 as he approached the Chihuahua/Bartlett intersection. His foot was still on the brakes at 08:17:24. The triggers indicate his foot was off the brake at 08:17:25, which was just before he entered the intersection. Yzaguirre hit Perez's vehicle in

the intersection at the 08:17:26 mark. The GPS showed he was travelling at about thirty-six miles per hour at the 08:17:25 mark. Perez alleges the speed limit is thirty miles per hour.

This evidence raises a material fact issue on whether Yzaguirre acted with reckless disregard for the safety of others, and that he knew or should have known his actions posed a high degree of risk of serious injury, but he did not care about the result. The undisputed evidence establishes Yzaguirre had his vehicle's lights activated and he was sounding his air horn as he drove into both the Malinche intersection and the Chihuahua/Bartlett intersection. The information from his dashboard camera establishes he was braking, almost came to a complete stop, and had slowed to about twenty-three miles per hour just before entering the Malinche intersection. Still braking when he entered the Malinche intersection, he was travelling at about sixteen miles per hour. After driving through the Malinche intersection, the dashboard camera information indicates Yzaguirre braked before entering the Chihuahua/Bartlett intersection, but then accelerated to about thirty-six miles per hour when he entered the Chihuahua/Bartlett intersection. By his own admission, Yzaguirre entered the Chihuahua/Bartlett intersection despite knowing he had a blind spot that blocked his view of Perez before he entered the intersection. Yzaguirre admitted he had, in the past, stopped for traffic failing to yield at an intersection as he attempted to drive through a red light; and he agreed he should brake as necessary if he had a blind spot blocking his view of oncoming traffic and had time to stop when driving through a red light.

---

1. Yzaguirre explained that the wailing siren is a constant sound. He said his vehicle was not set up to run both the wailing siren and the air horn at the same time.

## CONCLUSION

Viewing the evidence in the light most favorable to Perez, this evidence indicates more than a momentary lapse in judgment; instead, it raises a fact issue on whether Yzaguirre's actions reflected conscious indifference or reckless disregard for the safety of others. *Compare Tex. Dep't of Pub. Safety v. Bonilla,* No. 08–13–00117–CV, 481 S.W.3d 646, 654–55, 2014 WL 2451176, at *6 (Tex.App.–El Paso May 30, 2014, pet. filed) (evidence that officer did not remove his foot from his vehicle's accelerator pedal until .5 seconds before impact; he was distracted by turning on his in-car camera as he entered the intersection; a building to his right, the direction from which Bonilla was traveling, created a visual obstruction; and he did not use his vehicle's siren created a fact issue regarding whether officer acted with conscious indifference or reckless disregard to the risk of driving through the intersection against the red light), *with City of Pasadena,* 260 S.W.3d at 99–100 (evidence did not raise fact issue on whether officer's actions were taken with conscious indifference or reckless disregard despite entering a blind intersection on a red light because evidence showed officer had activated his emergency lights and siren, and slowed down before proceeding through intersection).

Because Perez raised a fact question about the applicability of the emergency exception to the waiver of immunity, we reverse the trial court's judgment dismissing the case for lack of jurisdiction, and remand for further proceedings.

Marialyn Barnard, Justice, concurring

Although I agree we must reverse and remand this matter back to the trial court, I write separately because I do not believe Perez produced a scintilla of evidence to establish Officer Yzaguirre acted with conscious indifference or reckless disregard for the safety of others. Rather, I believe Perez produced some evidence that Officer Yzaguirre was not responding to an emergency call. Thus, I agree the trial court's judgment dismissing the case for lack of jurisdiction should be reversed and the matter remanded to the trial court for further proceedings.

### BACKGROUND

Officer Yzaguirre, a patrol supervisor and field supervisor, was on patrol when he heard a police dispatch report that a "domestic disturbance" was in progress approximately seven miles from his location. Although he was not officially dispatched to the scene, Officer Yzaguirre testified he responded because he knew the officer assigned to the area of the call was busy with another case and was several miles away from the location of the domestic disturbance. According to Officer Yzaguirre, domestic disturbance calls are classified as high priority due to the potential changing nature of domestic situations.

Officer Yzaguirre testified he activated his vehicle's overhead lights and headed in the direction of the domestic disturbance. As he approached the intersection of Chihuahua Street and Bartlett Avenue, the officer stated he used the vehicle's overhead lights and air horn to alert drivers to his presence so they could move out of the way. Admittedly, Officer Yzaguirre did not activate the vehicle's siren, which emits a constant sound, explaining the siren did not work when he sounded the air horn. According to the officer, each time he hit the air horn, the siren would shut off because the vehicle would not permit both the air horn and the siren to emit sounds at the same time. Thus, because he was constantly using the air horn to get through traffic, the siren was not emitting

any sound. At the hearing, Officer Yza-guirre specifically stated, "It's called a Code 2. I was using my air horn faster than my siren was going. So it was constant on the air horn."

According to Officer Yzaguirre, when he approached the intersection immediately preceding the Chihuahua/Bartlett intersection, traffic was in the left lane, so he moved to the right lane, came to a complete stop, and then accelerated in order to pass traffic as he approached the Chihuahua/Bartlett intersection. The officer testified as he approached the Chihuahua/Bartlett intersection, he slowed down, looked left and right, and after seeing no vehicles and using his air horn and "due caution," proceeded through the intersection. As he was proceeding through the intersection, Perez's blue SUV entered the intersection on the right—on the officer's blind side—and he struck the SUV on its rear panel.

Perez sued Webb County, arguing Officer Yzaguirre's conduct proximately caused her injuries. Webb County filed a plea to the jurisdiction, asserting it is entitled to governmental immunity pursuant to the "emergency exception" set forth in the Texas Tort Claims Act ("the TTCA"). The trial court granted Webb County's plea to the jurisdiction, dismissing Perez's suit. Perez then perfected this appeal.

### Analysis

On appeal, Perez asserts the trial court erred in dismissing her suit because the "emergency exception" in section 101.055(2) of the Texas Tort Claims Act does not apply. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.055(2) (West 2011). Specifically, Perez claims Officer Yza-guirre was not on an "emergency call," and if he was, he did not comply with "laws and ordinances applicable to emergency action" as required by the emergency ex-

ception. See id. Perez also asserted Officer Yzaguirre's conduct involved an extreme degree of risk, and he had actual, subjective awareness of the risk his actions posed, "but he proceeded with conscious indifference to the rights, safety and welfare of others, including [Perez]." See id.

When, as here, a governmental body raises the "emergency exception," the plaintiff bears the burden of establishing the exception does not apply. Quested v. City of Houston, 440 S.W.3d 275, 284 (Tex. App.–Houston [14th Dist.] 2014, no pet.); Tex. Dep't of Pub. Safety v. Little, 259 S.W.3d 236, 238 (Tex.App.–Houston [14th Dist.] 2008, no pet.). However, Perez was only required to produce some evidence on any one of the following to raise a fact issue on immunity: (1) Officer Yzaguirre was not responding to an emergency call or reacting to an emergency situation; (2) Officer Yzaguirre did not act in compliance with the laws and ordinances applicable to the emergency situation; or (3) Officer Yzaguirre acted with conscious indifference or reckless disregard for the safety of others. See Quested, 440 S.W.3d at 284; Collins v. City of Houston, No. 14–13–00533–CV, 2014 WL 3051231, at *7 (Tex. App.–Houston [14th Dist.] July 3, 2014, no pet.) (mem.op.); Little, 259 S.W.3d at 238. The lead opinion authored by Justice Chapa holds Perez produced some evidence as to the third prong of the "emergency exception"—that Officer Yzaguirre "acted with reckless disregard for the safety of others, and that he knew or should have known his actions posed a high degree of risk of serious injury, but he did not care about the result." I respectfully disagree.

To raise a fact issue as to "reckless disregard," Perez was required to produce some evidence that Officer Yzaguirre knew his actions posed a high degree of risk of serious injury, but he t hen proceeded with conscious indifference or reckless disre-

gard of the risk posed. *See City of Pasadena v. Kuhn,* 260 S.W.3d 93, 99 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (citing *City of San Antonio v. Hartman,* 201 S.W.3d 667, 672 (Tex.2006)); *Pakdimounivong v. City of Arlington,* 219 S.W.3d 401, 411–12 (Tex.App.–Fort Worth 2006, pet. denied). Although the officer may have known his actions posed a high degree of risk, there is no evidence he acted with conscious indifference or reckless disregard of the risk his actions posed.

Officer Yzaguirre testified that before he entered the Chihuahua/Bartlett intersection, he: (1) slowed down; (2) looked to his left and right; (3) activated his emergency lights; (4) used his air horn; and (5) proceeded with caution. Moreover, GPS evidence confirmed Officer Yzaguirre slowed to approximately sixteen miles per hour when he entered the intersection immediately preceding the Chihuahua/Bartlett intersection, and although he accelerated shortly thereafter, it is undisputed he applied his brakes before entering the intersection. The vehicle's computer system established the vehicle's overhead lights were on and the officer used the air horn three or four times as he approached the Chihuahua/Bartlett intersection. Admittedly, Officer Yzaguirre testified that when he looked to his right, he recognized there was a blind spot, but decided to proceed through the intersection, albeit with caution.

It appears to me the lead opinion believes a material fact issue exists as to reckless disregard for the safety of others because Officer Yzaguirre: (1) knew there was a blind spot, but proceeded anyway; (2) accelerated as he was moving through the intersection; (3) had, "in the past, stopped for traffic failing to yield at an intersection as he attempted to drive through a red light," but did not in this case; and (4) "agreed he should brake as

necessary if he had a blind spot blocking his view of oncoming traffic and had time to stop when driving through a red light." I believe, however, that the evidence relied upon in the lead opinion—coupled with the fact that the officer slowed down as necessary, used audible and visual signals to alert the public to his presence, looked both left and right before entering the intersection, applied his brakes as he approached the Chihuahua/Bartlett intersection, and in his own words "tried to show due caution to the public" as he approached the intersection—conclusively establishes Officer Yzaguirre did what he could under the circumstances to proceed with caution through an intersection he knew had a blind spot. *See Kuhn,* 260 S.W.3d at 100 (pointing out that officer slowing down before proceeding through an intersection but colliding with another vehicle is insufficient to show reckless conduct as a matter of law); *see also City of Laredo v. Varela,* No. 04–10–00619–CV, 2011 WL 1852439, at *4 (Tex.App.–San Antonio May 11, 2011, pet. denied) (mem. op.) ("The use of his siren, emergency lights and vehicle brakes are acts that indicate Officer Cortinas was aware of the dangers to other[s] as he responded to the emergency call and he was not consciously indifferent to the plight of other drivers."). In my opinion, the officer's testimony conclusively establishes he was cognizant of the risk of serious injury his actions posed to the public, but he used caution—checking primarily for pedestrians and other vehicles—while still trying to respond to the priority domestic violence call in an expeditious manner. *See Varela,* 2011 WL 1852439, at *4; *Kuhn,* 260 S.W.3d at 100; *Pakdimounivong,* 219 S.W.3d at 411–12.

Admittedly, Officer Yzaguirre was traveling thirty-six miles per hour at the time of impact, yet this fact does not diminish the other actions he took in the interest of public safety, nor does it constitute evi-

dence that his actions were taken with conscious indifference or reckless disregard for the safety of others. In my opinion, there is nothing in the record to suggest Officer Yzaguirre lacked concern regarding the potential result of his actions. *See Kuhn,* 260 S.W.3d at 100; *Pakdimounivong,* 219 S.W.3d at 411–12. In light of his speed at the time of impact and awareness of his blind spot, the evidence, at best, raises a fact issue as to whether Officer Yzaguirre acted negligently or had a "momentary judgment lapse." *See Kuhn,* 260 S.W.3d at 99. This is insufficient to raise a fact issue with regard to conscious indifference or reckless disregard.

I do believe, however, Perez produced some evidence as to the first prong of the "emergency exception"—that Officer Yzaguirre was *not* responding or reacting to an emergency call or situation. *See Quested,* 440 S.W.3d at 284; *Collins,* 2014 WL 3051231, at *7; *Little,* 259 S.W.3d at 238. Therefore, the trial court erred in granting the plea to the jurisdiction and dismissing Perez's suit.

Perez contends Officer Yzaguirre was not responding to an emergency because: (1) it is undisputed he was not dispatched to the scene; (2) the Standard Operating Procedures Manual ("SOPs") used by the Webb County Sheriff's Office does not characterize domestic disturbance or domestic violence calls as "emergency calls"; and (3) it is unclear whether the call was a Code 2 call or Code 3 call—or whether either a Code 2 call or Code 3 call is an "emergency."

I agree with Perez. In this case, Perez produced evidence Officer Yzaguirre was not dispatched to the domestic disturbance call, suggesting the call was not an emergency. *Cf. Collins,* 2014 WL 3051231, at *7 (stating plaintiff's evidence that dispatcher did not characterize call as emergency raised fact issue as to whether call was emergency.). Moreover, Officer Yzaguirre admitted the SOPs do not specifically list a "domestic disturbance" or "domestic violence" call [1] as an "emergency call." The SOPs do, however, include "assault in progress with weapons involved" as an "emergency," but Officer Yzaguirre admitted he was *assuming* a weapon might be involved; he was not advised that a weapon was involved. Furthermore, there is no evidence Office Yzaguirre requested assistance, which by his own admission, would usually be requested if the call was an emergency.

Additionally, Perez presented evidence that Officer Yzaguirre was not using his siren when he responded to the call. She suggests this undisputed fact shows the call was a Code 2 call, and therefore not an emergency because according to the SOPs, a Code 3 call mandates the use of red and blue emergency lights and *sirens.* According to Officer Yzaguirre, officers responding to a Code 2 call use their overhead lights with either the siren *or* air horn, and officers responding to a Code 3 use "pretty much everything that the car can give you." This testimony suggests a Code 3 call is a higher priority call—perhaps rising to the level of an emergency, whereas a Code 2 call is a lower priority call—perhaps not rising to the level of an emergency. The evidence on this is less than clear, which I believe in itself raises a fact issue.

Obviously, however, the difference between a Code 2 call and a Code 3 call is the use of equipment. Officer Yzaguirre

---

1. In his testimony, Officer Yzaguirre interchangeably referred to the call as a "domestic disturbance" and "domestic violence" call.

admitted he was using his overhead lights and air horn only, which is some evidence of a non-emergency, i.e., a Code 2 call. Moreover, Officer Yzaguirre admitted when he responded to the call he "was running a Code 2" contrary to his previous testimony to the Accident Review Board where he characterized the call as a Code 3 call.

Thus, when the evidence is considered in the light most favorable to Perez, I contend she produced some evidence, sufficient to create a fact issue, as to whether Office Yzaguirre was responding to an emergency call. Therefore, I agree with the conclusion in the lead opinion that the trial court's judgment should be reversed and the matter remanded to the trial court. Accordingly, I concur in the judgment.

Sandee Bryan Marion, Chief Justice, dissenting

I respectfully dissent because I believe (1) in responding to a "domestic call in progress," Corporal Horacio Yzaguirre was reacting to an emergency situation and Adriana Perez did not raise a fact issue on this question, and (2) Yzaguirre's actions were, at most, negligent and/or merely a "momentary judgment lapse" and Perez did not raise a fact issue regarding whether Officer Yzaguirre's actions were taken with "reckless disregard for the safety of others." Therefore, I would affirm the trial court's order granting Webb County's motion to dismiss.

## EMERGENCY

The Texas Tort Claims Act ("TTCA") does not define the terms "emergency call" or "emergency situation," but the Texas Supreme Court has interpreted the term "emergency" broadly. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex.2006). The *Hartman* court held that

"because the Act creates governmental liability where it would not otherwise exist, we cannot construe section 101.055(2) to exclude emergencies the Legislature might have intended to include." *Id.* at 672–73 (city was reacting to an emergency where, among other things, there was imminent threat of severe injury, loss of life or property due to city-wide flooding); *see also Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 410–11 (Tex.App.–Fort Worth 2006, pet. denied) (officers were reacting to emergency situation where suspect in back of patrol car tried to escape through window while being transported to jail); *see also Jefferson Cnty. v. Hudson*, No. 09–11–00168–CV, 2011 WL 3925724, at *3 (Tex.App.–Beaumont Aug. 25, 2011, no pet.) (mem.op.) ("emergency" refers to unforeseen circumstances requiring immediate action).

Perez contends Officer Yzaguirre was not responding to an emergency because (1) he was not dispatched to the scene; instead, he took it upon himself to respond; (2) the Webb County Sheriff's Office Standard Operating Procedures ("SOPs") characterize seven types of calls as "emergency calls," and a domestic disturbance is not among those listed; and (3) he was in heavy traffic seven miles away when he decided to respond as a Code 3 even though the call was only a Code 2. Perez also notes the evidence is conflicting on whether the call was a Code 2 or a Code 3. Perez contends that, although Officer Yzaguirre characterized the call as a Code 2 at the hearing on Webb County's motion to dismiss, he had earlier characterized it as a Code 3, which requires the use of both lights and siren.

Officer Yzaguirre testified he was in his patrol car working as a patrol and field supervisor when he heard a radio dispatch "for a domestic call in progress in Los

Botines out of Highway 359."[1] Because he knew the officer assigned to the area of the call was on another case and because Officer Yzaguirre was only about seven miles from the location of the call, Officer Yzaguirre decided to respond to the call. Officer Yzaguirre testified that, as a supervisor, the Webb County Sheriff's Office Standard Operating Procedures ("SOPs") provide he could respond to emergency calls even though not dispatched. Therefore, although not dispatched to the scene, Officer Yzaguirre decided to respond. Officer Yzaguirre said a domestic violence call, such as the one here, is classified as "high priority" because "[i]t changes quickly, needs immediate attention due to the fact that it was an assault in progress, so you respond as quickly as possible."

The SOPs do not specifically list "domestic violence" as an "emergency call," but they do include "assault in progress with weapons involved," which is the call Officer Yzaguirre said he was responding to, although he admitted he did not know if a weapon was involved, but he assumed the potential of a weapon. The SOPS also include, among the list of "emergency calls," "other felony in progress," and Officer Yzaguirre believed that applied as well because if the suspect had a weapon the charge could be increased to an aggravated assault, "domestic violence would be more severe." Officer Yzaguirre also testified that the audio version of his dashboard camera indicated he needed to get to the scene quickly because there was "an actual call ... [that a] suspect was on the scene still—where officers were running urgent to the call. They were running faster, trying to get there quicker." There is also no dispute that, as a patrol supervisor, Officer Yzaguirre had the discretion to respond to the call even if he was not dispatched. He also said that because he

is a supervisor, he is not required to inform dispatch whether he is "in a [Code] 3 or 2 or 1, as long as I make it to the call."

The TTCA governs immunity for claims arising from a governmental employee's actions while "responding to an emergency call," as well as the employee's reactions to an "emergency situation." *See* Tex. Civ. Prac. & Rem.Code § 101.055(2). Officer Yzaguirre was reacting to "a domestic call in progress," and he explained, without contradiction, that these calls are considered an emergency or high priority "due to the fact of the nature of the violence of the call." *See Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex.App.–Houston [14th Dist.] 2008, no pet.) (officer responded to dispatch call requesting assistance with a wanted person, officer testified without contradiction that law enforcement officers consider such requests to be an emergency).

The fact that the SOPs do not expressly list "domestic violence" as an "emergency call," does not alter the undisputed facts regarding the reason Officer Yzaguirre responded to the call and the information to which he was reacting. *See, e.g., Little*, 259 S.W.3d at 239 (where officer did not learn that emergency situation did not exist until later, but was responding to miscoded emergency call, no fact issue was raised regarding whether emergency exception applied). Nor does the fact that Officer Yzaguirre was seven miles away from the domestic violence incident alter the nature of the call as an "emergency." *See Hartman*, 201 S.W.3d at 673 ("The Hartmans argue that the City had at least six hours to place a barricade on the west side of the Rigsby flood, a period they deem too long to constitute an emergency. But we cannot restrict our review to Rigsby Avenue, any more than the City could.

1. The record does not contain a recording or transcription of the actual dispatch call.

The statute exempts governments reacting to an emergency situation, which necessarily includes prioritizing some risks over others. Under the statute, evidence that the City had time to do more at Rigsby Avenue is not evidence that the City was no longer reacting to an emergency situation.").

Finally, I do not believe how the SOPs would define a Code 2 or Code 3 or whether the call was a Code 2 or a Code 3 raises a fact issue on whether Officer Yzaguirre was reacting to an emergency situation. According to Officer Yzaguirre, a Code 1 is for normal traffic, such as stopping at stop signs, yielding to oncoming traffic, maintaining the speed limit, and abiding by all traffic codes. A Code 2 is for using the overhead lights with either the siren or air horn. Officer Yzaguirre stated a Code 2 does not necessarily mean you have to use lights and sirens. However, he said department policy allows for driving "a little bit over the speed limit" with a Code 2, usually for burglaries in progress, some domestic violence calls, and other calls. Officer Yzaguirre stated a Code 3 is "pretty much everything that the car can give you." He said the difference between a Code 2 and a Code 3 is the use of lights and sirens. However, the SOPs give officers some discretion to use either lights or audibles: "Officers may activate emergency signal devices on their own volition, if determined that the technology will aid in a crisis, emergency or perceived problem situation." Therefore, I do not believe whether the call was a Code 2 or a Code 3 raises a fact issue because there is no dispute that Officer Yzaguirre was using his emergency lights and air horn while responding to a "domestic call in prog-

ress," which I believe, under the circumstances here, was an emergency situation.

For these reasons, I conclude the County established Officer Yzaguirre was reacting to an emergency situation and Perez did not raise a fact issue on this question.

## COMPLIANCE WITH APPLICABLE LAWS/RECKLESS DISREGARD

The Texas Transportation Code allows the driver of an authorized emergency vehicle to proceed passed a red light and exceed the maximum speed limit, after slowing where necessary and so long as the driver does not endanger life or property. Tex. Transp. Code Ann. § 546.001(2), (3) (West 2011). With certain exceptions, the Transportation Code also provides that the operator of an authorized emergency vehicle engaging in conduct permitted by section 546.001 "shall use, *at the discretion of the operator in accordance with policies of the department or the local government that employs the operator,* audible or visual signals that meet the pertinent requirements of Sections 547.305 and 547.702." [2] *Id.* § 546.003 (emphasis added). "A police officer may operate an authorized emergency vehicle for a law enforcement purpose without using the audible or visual signals required by Section 546.003 *if the officer is ... complying with a written regulation relating to the use of audible or visible signals adopted by the local government that employs the officer or by the department.*" *Id.* § 546.004(c)(2) (emphasis added). These, and other, sections of the Transportation Code impose a duty on drivers of authorized emergency vehicles to "operate the vehicle with appropriate regard for the safety of all persons." *Id.* § 546.005(1); *see also City of Amarillo v. Martin,* 971 S.W.2d 426, 434 (Tex.1998)

---

**2.** Sections 547.305 and 547.702 deal with the physical requirements of the lights, and are

not at issue in this appeal.

(holding predecessor to section 546.005 "imposes a *duty* to drive with due regard for others by avoiding negligent behavior"). The SOPs also require a driver to activate emergency signal devices and headlights "as required by law." Similar to the Transportation Code, the SOPs impose a duty on drivers of emergency vehicles, when "executing maneuvers contrary to the Transportation Code ... 'to drive with due regard for the safety of all persons.'"

However, although a driver of an emergency vehicle is under a duty to act "with appropriate regard for the safety of all persons," he is subject to liability only for "the consequences of *reckless disregard* for the safety of others." *Id.* § 546.005(2) (emphasis added); *see also Martin,* 971 S.W.2d at 434 (holding same under predecessor statute); Tex. Civ. Prac. & Rem.Code Ann. § 101.055(2) (West 2011) (waiver of immunity does not apply, inter alia, "if the action is not taken with conscious indifference or reckless disregard for the safety of others"). Similarly, the SOPs provide that "the exceptions exempting the drivers of emergency vehicles from provisions of the Transportation Code do not protect the driver 'from the consequences of his reckless disregard for the safety of others.'"

A person commits the offense of reckless driving if "the person drives a vehicle in wilful or wanton disregard for the safety of persons or property." *Id.* § 545.401(a). "Conscious indifference" and "reckless disregard" are not defined in the statute; but, those terms have been interpreted to require proof that a party knew the relevant facts but did not care about the result. *Hartman,* 201 S.W.3d at 672 n. 19. Thus, a governmental entity is liable for damages resulting from the operation of an emergency vehicle only if the operator acted recklessly; that is, only if the operator "committed an act that the operator

knew or should have known posed a high degree of risk of serious injury" but did not care about the result. *Martin,* 971 S.W.2d at 430; *Smith v. Janda,* 126 S.W.3d 543, 545 (Tex.App.–San Antonio 2003, no pet.). Under this standard, Perez was required to raise a fact issue on whether Officer Yzaguirre committed an act he knew or should have known posed a high degree of risk of serious injury, as opposed to a mere momentary judgment lapse. *Martin,* 971 S.W.2d at 430; *City of Pasadena v. Kuhn,* 260 S.W.3d 93, 99 (Tex. App.–Houston [1st Dist.] 2008, no pet.). I do not believe a fact issue was raised.

As explained above, the SOPs provide for the use of lights and/or audibles based, to some degree, on whether the call is characterized as a Code 1, 2, or 3. There is conflicting evidence on whether Officer Yzaguirre was responding to a Code 2 call or a Code 3 call. At the hearing, he stated he was on a Code 2 call, which does not require the use of a siren. However, Officer Yzaguirre was confronted with his testimony before the Accident Review Board during which he characterized the call as a Code 3. Under the SOPs, a Code 3 call requires the use of red and blue emergency lights and sirens. The SOPs do not mention Code 2 calls, but according to Officer Yzaguirre, a Code 2 call requires the use of overhead red and blue lights with either an air horn or a siren. Because there is a fact issue on whether Officer Yzaguirre was responding to Code 2, which does not require the use of a siren, I assume, without deciding, that he was responding to a Code 3 call, which does require the use of a siren. Nevertheless, this alone is not determinative of whether Perez raised a fact issue sufficient to satisfy her burden.

The evidence in the light most favorable to Perez reveals Officer Yzaguirre was unable to see Perez before he entered the

intersection, he was driving at a speed over the posted limit, he drove through the red light at the intersection, and he had not activated the siren on his vehicle. However, I do not believe this evidence raises a fact issue on whether Officer Yzaguirre acted with conscious indifference or reckless disregard for the safety of others.

Officer Yzaguirre testified he did everything he could to be cautious, he slowed down as necessary, he used audible signals as necessary to alert citizens to his presence, and he braked and did not accelerate through an intersection. He also stated he checked in both directions as he entered an intersection. When asked his normal procedure for approaching an intersection when responding to an emergency, Officer Yzaguirre responded as follows:

> I try to use as much caution as possible, slow down at the intersection, using my overheads, my air horn, siren, depending on the nature of the call, the time of day, the road conditions, also to distinguish what I would use. Mostly, I would use caution.
>
> . . .
>
> Checking. Checking for pedestrian or other vehicles not listening to the emergency vehicle, checking left, checking right, using caution. Go slowly, as slow as possible, but still trying to answer the call with adequate time.
>
> . . .
>
> . . .So, I mean, you have numerous things going on in the car. You have the radio going on. You're trying to use different audibles to alert different types of people. You have your air horn going off as you're approaching intersections. I try to do everything possible to alert the community that I'm trying to get through to an emergency.

Officer Yzaguirre testified that, as a field supervisor, he has some discretion as to what type of equipment he may use when responding to an emergency. Officer Yzaguirre testified that in this instance, he looked both ways before entering the Chihuahua/Bartlett intersection against the red light. As indicated by the information from Officer Yzaguirre's dashboard camera, the impact between his vehicle and Perez's occurred at the 08:17:26 timer mark. The triggers on the camera screen indicate he had turned on his emergency lights, used his air horn three or four times, and hit his brakes at the timer mark of 08:17:23 as he approached the Chihuahua/Bartlett intersection. His foot is still on the brakes at 08:17:24, but off the brakes at 08:17:25—one second before impact. Although he had slowed to about sixteen miles per hour at the prior intersection, Officer Yzaguirre was apparently travelling at approximately thirty-six miles per hour when he entered the Chihuahua/Bartlett intersection.

The use of his emergency lights and air horn, his testimony that he looked both ways before entering the Chihuahua/Bartlett intersection, his travelling at only about six miles over the speed limit, and the fact that his foot was on the brake until one second before impact indicates Officer Yzaguirre was aware of the dangers to others as he responded to the call and he was not consciously indifferent to or acting with reckless disregard for the safety of others. *See City of Laredo v. Varela*, 2011 WL 1852439, *4–5 (Tex.App.–San Antonio May 11, 2011, pet. denied) ("According to the clock on the video, the accident took place less than one second after the officer stopped applying his brakes, which indicates the officer was relatively close to the intersection when he stopped applying his brakes. The use of his siren, emergency lights and vehicle brakes are acts that indicate Officer Cortinas was aware of the dangers to others as he responded to the emergency call and he

was not consciously indifferent to the plight of other drivers.... Moreover, the use of his siren, emergency lights and vehicle brakes, indicate Officer Cortinas took precautions to avoid a risk of harm to others.").

Although Officer Yzaguirre may have been negligent, I do not believe Perez raised a fact question on whether he committed an act he knew or should have known posed a high degree of risk of serious injury, as opposed to a mere momentary lapse in judgment. *Martin*, 971 S.W.2d at 430.

## CONCLUSION

Officer Yzaguirre was driving an authorized emergency vehicle while responding to an emergency situation with his lights activated and while using his air horn. Therefore, Webb County met its burden to establish lack of subject matter jurisdiction. The burden then shifted to Perez to raise a material question of fact on whether Officer Yzaguirre was responding to an emergency call/emergency situation or whether he acted with conscious indifference to or reckless disregard for the safety of others. I do not believe she satisfied her burden; therefore, I would affirm the trial court's order granting Webb County's motion to dismiss for lack of jurisdiction.